UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

DARRELL PERKINS,

    Petitioner,

vs.

BEN CURRY, Warden,

    Respondent.

No. C 08-4742 PJH (PR)

**ORDER DENYING HABEAS PETITION AND GRANTING/DENYING CERTIFICATE OF APPEALABILITY**

    This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The petition is directed to a denial of parole.

## BACKGROUND

### I. Procedural Background

    This court ordered respondent to show cause why a writ should not issue as to what the court took to be petitioner's only issue, that there was not "some evidence" to support the parole denial. Respondent answered, addressing that issue, and petitioner filed a traverse. Petitioner also filed a motion for an order requiring respondent to produce records of his plea proceedings. The court denied the motion, noting that the only issue in the case was the "some evidence" issue and that petitioner had not explained why the plea proceedings were relevant, but allowing petitioner to renew the motion with an explanation. Petitioner did renew it, explaining that his discussion in the petition contained a contention that his plea agreement had been violated.

    The court granted the motion, concluding that although petitioner had listed only one issue -- the "some evidence" issue -- in the part of the petition that calls for a list of issues, his discussion did include a "breach of plea agreement" claim, and in fact he had cited

*Santobello v. New York*, 404 U.S. 257, 262 (1971), the landmark decision holding that the Constitution requires performance of plea agreements. The court also ordered respondent to show cause why the writ should not be granted on the plea claim. Respondent filed a supplemental answer addressing the plea claim and as much of the record as he was able to locate, and petitioner filed a supplemental traverse.

**II.    Factual Background**

In 1987 petitioner pled guilty to second degree murder and was sentenced to prison for seventeen years to life. This petition is directed to a denial of parole on October 31, 2007. At the hearing, petitioner contended that his "rights" were not being respected in that the Board declined to conduct the hearing under what petitioner referred to as the "rules" or "guidelines" of his plea bargain. Pet., Ex. A (transcript of hearing, hereafter cited as "Tr.") at 12-13, 16. He did not provide any explanation what he meant by that. *Id.* at 10-17. Dissatisfied with the Board's response to his demand, he left the hearing, which proceeded without him. *Id.* at 17-18. He was found unsuitable for parole and given a three-year denial. *Id.* at 35-42.

**DISCUSSION**

**I.    Standard of Review**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

///

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court.  *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended,* 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do.  *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El,* 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

///

## II.   Impact of *Hayward*

In the relatively recent case of *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc), the court held that there is no constitutional right to "release on parole, or to release in the absence of some evidence of future dangerousness" arising directly from the Due Process Clause of the federal constitution; instead, any such right "has to arise from substantive state law creating a right to release." *Hayward*, 603 F.3d at 555.  The court overruled *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003); *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006); and *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007), "to the extent they might be read to imply that there is a federal constitutional right regardless of whether state law entitles the prisoner to release . . . ." *Hayward*, 603 F.3d at 556.  All three of those cases had discussed the "some evidence" requirement, but in all three it was clear that the requirement stemmed from a liberty interest created by state law; that portion of the cases, therefore, was not overruled by *Hayward*.  *See Biggs*, 334 F.3d at 914-15; *Sass*, 461 F.3d at 1127-19; *Irons*, 505 F.3d at 850-51; *see also Cooke v. Solis*, 606 F.3d 1206, 1213-14 (9th Cir. 2010) (post-*Hayward* case; noting that California law gives rise to a liberty interest in parole).  However, all three also contained references in dictum to the possibility that "[a] continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, [would] run[] contrary to the rehabilitation goals espoused by the prison system and could result in a due process violation." *Biggs*, 334 F.3d at 916-17; *see also Sass*, 461 F.3d at 1129; *Irons*, 505 F.3d at 853-54.  It appears that this possibility, referred to below as a "*Biggs* claim," is the only thing that was "overruled" by *Hayward*.

Aside from making clear that there could be no *"Biggs* claim" arising directly from the Due Process Clause of the Constitution, cases decided subsequent to *Hayward* have clarified that federal habeas review of California parole decisions remains much the same as it was prior to that decision.  The Ninth Circuit still recognizes that California law gives rise to a liberty interest in parole.  *Pirtle*, 611 F.3d 1015, 1020-21 (9th Cir. 2010); *Cooke,* 606 F.3d at 1213-14; *Pearson,* 606 F.3d at 610-11.  Under California law, "some evidence"

of current dangerousness is required in order to deny parole. *Hayward*, 603 F.3d at 562 (citing *In re Lawrence*, 44 Cal. 4th. at 1191, 1209-15 (2008), and *In re Shaputis*, 44 Cal.4th 1241 (2008)). "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state." *Cooke*, 606 F.3d at 1213. A federal court considering a "some evidence" claim directed to a parole denial thus must determine whether there was "some evidence" of current dangerousness to support the parole board's decision; if not, the prisoner's due process rights were violated. This was also true prior to *Hayward*, although now the rationale is that the Court is applying California's "some evidence" rule as a component of the required federal due process.

## III. Issues Presented

### A. Respondent's Contentions

In the answer, respondent argues that California prisoners have no liberty interest in parole, and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. He says these contentions are made to preserve the issues for appeal. Even after the en banc decision in *Hayward*, these contentions are incorrect. *See Pirtle v. California Bd. of Prison Terms*, 611 F.3d 1015, 1020-21 (9th Cir. 2010) (California law creates a federal liberty interest in parole; that liberty interest encompasses the state-created requirement that a parole decision must be supported by "some evidence" of current dangerousness); *Cooke v. Solis*, 606 F.3d 1206, 1213-14 (9th Cir. 2010) (same); *Pearson v. Muntz*, 606 F.3d 606, 610-11 (9th Cir. 2010) (same).

Respondent is correct, however, that if the court concludes that the Board's decision was not supported by "some evidence," the correct remedy is not to order that he be released on parole, but rather to order that the Board conduct another eligibility hearing at which the prisoner's rights are respected. *See Haggard v. Curry*, No. 10-16819 (9th Cir. Order Oct. 12, 2010).

///

**B.     Petitioner's Claims**

Petitioner contends that denial of parole was not supported by "some evidence" and that his plea agreement was breached.

**1.     "Some Evidence"**

A federal district court reviewing a California parole decision "must determine 'whether the California judicial decision approving the governor's [or the Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(1)-(2)). That requirement was summarized in *Hayward* as follows:

> As a matter of California law, 'the paramount consideration for both the Board and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety.' There must be 'some evidence' of such a threat, and an aggravated offense 'does not, in every case, provide evidence that the inmate is a current threat to public safety.'

*Id.* at 562 (quoting *Lawrence*, 44 Cal.4th. at 1191, 1209-15); *see also Cooke*, 606 F.3d at 1214 (describing California's "some evidence" requirement). The circumstances of the commitment offense itself "cannot constitute evidentiary support for the denial of parole 'unless the record also established that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicated that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.'" *Cooke*, 505 F.3d at 1216 (quoting *Lawrence*, 44 Cal. 4th at 1214).

The facts of the offense were read into the record by the Presiding Commissioner:

> [¶] On December 4, 1986 at approximately 10:00 a.m witness . . . Eastman . . .  was outside of 2102 East Pyrue (phonetic) Street, East Compton, when he heard a single gunshot.  Later, at approximately 5:00 p.m., he saw Darrell Perkins walking near the above residence, when [petitioner] asked him (Edgar Eastman) to help him get rid of the stiff.  The [petitioner] told him that he shot Leonard Moss, . . ., because he caught Daphne . . . co-defendant and, I believe it was the decedent's girlfriend, caught her in the bathroom and he thought Leonard Moss had raped her.  [Petitioner] said he shot the victim in the head.
> [¶] Eastman then said, at approximately 10:00 p.m. to 11:00 p.m., on the same date, he and [petitioner] stopped by 2102 East Pyrue and he saw

6

> the body of Leonard Moss on the bed in the west bedroom. The victim had been shot and was bloody. The [petitioner] asked Eastman to help him get rid of the body. He finally agreed to help.
> [¶] They carried the body to the kitchen, got a black electric cord and tired the victim's body up. Blood was also on the kitchen floor. The victim was carried out with co-defendant Daphne . . . keeping a lookout for the police. [Petitioner] and Eastman carried the victim to the trunk of Daphne's Cadillac. It was approximately 3:00 a.m. on December 5, 1986.
> [¶] All three of them, [petitioner] Perkins, co-defendant Henry and himself drove off in Daphne's Cadillac. They drove on the Long Beach Freeway to I-5, then to [the] San Fernando Valley. Eventually, they got off the freeway and dumped the body close to the Angeles National Forest.
> [¶] They started back to Compton, [petitioner] Perkins told Witness Eastman on the return trip, not to say anything to anyone because if the body was ever found he would know who talked. Witness Eastman was dropped off on Cherry Street at 8:30 a.m. to 9:30 a.m. on December 5th, 1986. Both defendants then drove off. Witness Eastman returned to the location of 2102 East Pyrue later that night and saw a mattress being burned across the street and the fire department came. Subsequently, both defendants were arrested on the indicated charge.

Tr. at 18-20.

At the time of the hearing in 2007, petitioner was approximately forty-eight years old and had served about nineteen years on his sentence of seventeen years to life. The *Lawrence* standard requires that to support a finding of current dangerousness there must be "'something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicat[ing] that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.'" *Cooke*, 505 F.3d at 1216 (quoting *Lawrence*, 44 Cal. 4th at 1214). Here, that "something" was that (1) he was belligerent, stubborn, and hostile at the hearing, suggesting that he had not learned self-control, Tr. 10-17; (2) he had at least two probation revocations and one parole revocation prior to the offense, suggesting an inability to benefit from parole, *id.* at 21-22; (3) he had abandoned Alcoholics Anonymous in 2002, *id.* at 29; and (4) he did not have any current parole or employment plans, *id.* at 29-30.

In light of this evidence, the state courts' applications of the California "some evidence" requirement, and those courts' consequent rejections of the claim, were not "based on an unreasonable determination of the facts in light of the evidence." *See* 28

U.S.C. § 2254(d)(2). This claim therefore cannot be the basis for federal habeas relief. *See Cooke*, 606 F.3d at 1215 (federal habeas court considering California parole "some evidence" claim must apply § 2254(d)(2)); *Hayward*, 603 F.3d at 562-63 (requiring application of California's "some evidence" standard).

### 2. Breach of Plea Agreement

Petitioner contends that the Board has breached his plea bargain. Respondent contends that this claim is barred by the statute of limitations and is not exhausted.

Respondent contends that this claim is untimely because it was not filed within one year of the date when petitioner should have been paroled under his interpretation of the plea agreement. Because he is correct as to the limitations argument, the court need not reach the exhaustion contention. *See* 28 U.S.C. § 2254(b)(2) (court may deny unexhausted claims).

The statute of limitations provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the one-year time limit. *Id.* § 2244(d)(2).

///

The limitations period of Section 2244(d) applies to "all habeas petitions filed by persons in 'custody, pursuant to the judgment of a State court,' . . . even if the petition challenges a pertinent administrative decision rather than a state court judgment." *Shelby v. Bartlett*, 391 F.3d 1061, 1063 (9th Cir. 2004). Because petitioner is in custody as a result of a state court judgment, the statute of limitations as provided in Section 2244(d) therefore is applicable to him. For claims that the state breached a plea agreement, such as petitioner raises here, the limitations period begins running on the date the petitioner knew or should have known of the breach. *See Bryant v. Curry*, 2010 WL 3168385 at *4 (N.D. Cal. 2010) (limitations period began on date petitioner knew or should have known of the breach); *Burns v. California,* 2009 WL 2381423 at *3 (C.D. Cal. 2009) (limitations period began running on the date of the breach)[1]; *Crenshaw v. Tilton*, 2008 WL 878887 at *6 (S.D. Cal. 2008) (limitations period begins running on date prisoner knew or should have known there had been a breach); *Singleton v. Curry*, 2007 WL 1068227 at *2 (N.D. Cal. 2007) (limitations period for breach of plea bargain claim is determined under section 2244(d)(1)(D)); *Daniels v. Kane*, 2006 WL 1305209, *1 (N.D. Cal. 2006) (statute of limitations begins to run on "the date a petitioner knew or should have known that a breach occurred"); *Murphy v. Espinoza*, 401 F.Supp.2d 1048, 1052 (C.D. Cal. 2005) (statute of limitations begins to run on date petitioner became aware, or should have become aware, that the plea agreement had been breached).

Petitioner contends that his plea agreement provided that he would serve no fewer than ten years nor more than fifteen. Pet. Supp. Reply at 1. His claim, therefore, is that it

---

[1] In *Burns* the court characterized the limitations period as starting "on the date the inmate claims the state breached the plea agreement." 2009 WL 2381423 at *3. The court cited *Murphy v. Espinoza*, 401 F.Supp.2d 1048, 1052 (C.D. Cal. 2005), in support of that proposition, describing *Murphy*'s holding as "(statute of limitations begins to run on date petitioner claimed State breached plea agreement)." *Burns*, 2009 WL 2381423 at *3. In fact, however, *Murphy* treated the limitations period as starting when the petitioner knew, or should have known, there had been a breach, and did not say that it started on the date of breach. *Murphy*, 401 F.Supp.2d at 1052. Furthermore, even in *Burns* itself the court applied the "knew or should have known" standard, despite having recited the "date of breach" standard earlier in the ruling. *Burns*, 2009 WL 2381423 at *3. This court therefore concludes that *Murphy* and *Burns* are in fact authority for the proposition that the correct trigger date is when the petitioner knew or should have known of the breach.

9

was a breach of the plea bargain to hold him beyond fifteen years from when he commenced serving his sentence. He began serving the sentence on November 22, 1988, Tr. 3, so even ignoring time credits, the latest he could have become aware that he was not going to be paroled in fifteen years was in November of 2003. This petition was not filed until October 15, 2008, long after the one-year limitations period had expired, and petitioner does not contend that he is entitled to tolling. This claim is barred by the statute of limitations.

**IV.    Appealability**

The federal rules governing habeas cases brought by state prisonersrequire a district court that denies a habeas petition to grant or deny a certificate of appealability in the ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability (formerly known as a certificate of probable cause to appeal). *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The certificate must indicate which issues satisfy this standard. *See id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This was not a close case. For the reasons set out above, jurists of reason would not find the result debatable or wrong. A certificate of appealability will be denied. Petitioner is advised that he may not appeal the denial of a COA, but he may ask the court of appeals to issue a COA under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a), Rules Governing § 2254 Cases. Although a certificate of appealability has been denied, if he wishes the court of appeals to consider whether one should issue he

10

should also file a notice of appeal in this court. *See* Rule 11(a), Rules Governing § 2254 Cases.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. A certificate of appeal ability is **DENIED.** The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  October 25, 2010.

                            PHYLLIS J. HAMILTON
                            United States District Judge

P:\PRO-SE\PJH\HC.08\PERKINS4742.RUL.wpd